UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Gerald Laurendeau</u>

    v.                        Civil No. 05-cv-441-JD
                                   Opinion No. 2006 DNH 121
<u>Sheet Metal Workers' Local</u>
<u>17C-NH Pension Trust</u>


O R D E R


    Gerald Laurendeau brought suit under the Employee Retirement
Income Security Act ("ERISA"), challenging the decision of the
Sheet Metal Workers Local 17C-NH Pension Trust to suspend payment
of his pension benefits after he had resumed work.  He moves to
modify the record, seeking to add his affidavit and exhibits
pertaining to benefits he continued to receive from the Sheet
Metal Workers' International Association despite his resumed
employment.  Laurendeau also moves to suspend Local Rule 9.4, and
submits additional documents to supplement the record.  The
Pension Trust objects to both motions.


Background

    Laurendeau participated in the Sheet Metal Workers' Local
No. 17C-NH Pension Plan ("the Plan") for thirty nine years while
working for Empire Sheet Metal Company.  In November of 2004,
Laurendeau took early retirement and began receiving pension
benefits from the Sheet Metal Workers' International Local No.

17C–NH Pension Trust ("Pension Trust").[1]  On January 1, 2005, Laurendeau began work for B. A. Roy Steel Erectors, Inc., in the capacity of a "Miscellaneous Iron and Maintenance Worker."

The Plan is administered by the Pension Trust Trustees.  The Plan gives the Trustees "total and absolute discretion with respect to the general administration and interpretation of the Plan."  Plan § 6.05.  The Trust Agreement also gives the Trustees absolute and complete power to construe the provisions of the Agreement and incorporates the Plan into the Trust Agreement.

At a meeting on June 8, 2005, the Trustees discussed Laurendeau's resumed employment and concluded that the work he was doing made him ineligible to continue to receive benefits from the Pension Trust under the terms of the Plan.  The Trustees decided to suspend payment of Laurendeau's pension, unless he could prove that he was not working in the sheet metal trade.  Laurendeau was notified on June 10, 2005, that his pension would be suspended as of July 1, 2005.  The decision to suspend pension payments was based on Section 5.03 of the Plan and Section 14 of the Summary Pension Plan.

Section 5.03(a) of the Plan precludes pension benefits if a retiree returns to work as "a sheet metal worker or in other

---

[1]The court notes that the documents in the record and the parties use "Local No. 17C" and "Local No. 17" interchangeably in the titles of the Pension Trust, the Plan, the Summary Pension Plan, and the union.  No explanation has been provided for the difference.

related crafts within the jurisdiction of any local union of the

Sheet Metal Workers' International Association."[2]  Admin. Rec. at

17.  Section 14 of the Summary Pension Plan provides, in

pertinent part:

> If you return to employment, other than as a sole
> proprietor or partner, in the trade, or in other
> related crafts, within the jurisdiction of any local
> union of the Sheet Metal Workers' International
> Association, after you have taken Normal, Early or
> Deferred Vested Retirement and begun to receive your
> monthly pension benefit from the Plan, payment of your
> benefits will be suspended for any calendar month in
> which you are employed for **forty (40)** or more Hours of
> Service.

Section 14 also explains that the additional restriction added by

amendment, effective on May 1, 2005, applies only to benefits

accrued after that date.  Section 5.03(b) requires a pensioner

who returns to work to provide written notice to the Board of

Trustees within three days of returning to work and to provide

written notice when he is no longer working.  That section also

provides that if a pensioner resumes work without properly

notifying the Trustees, the Board is entitled to presume that the

pensioner is engaged in employment that requires suspension of

benefits.

---

[2]Section 503(a) was amended, effective May 1, 2005, to add a
restriction if a retiree resumed work "in any capacity with an
employer that is a sheet metal contractor (or is a contractor in
other related crafts) that is not a party to, or is otherwise
bound by, the Collective Bargaining Agreement with the Union or a
collective bargaining agreement with any local union of the Sheet
Metal Workers' International Association."  Admin. Rec. at 66.

Laurendeau did not provide written notice to the Trustees when he began work at B. A. Roy Steel on January 1, 2005.  He states in his affidavit that he notified the Trustees "orally" that he was returning to work and was told his work was permitted.  On June 16, 2005, after he received notice that his benefits were being suspended, Laurendeau sent the Trustees a letter explaining his work at B. A. Roy and asserting that he was not doing sheet metal work or any work connected with the trade. He listed his duties as work on aluminum and steel truck beds; repair and welding of aluminum and cast iron parts, boats, and trailers; welding and repair of shop equipment, and welding and layout of structural steel and stainless steel railings.

On August 1, 2005, Laurendeau wrote to the Trustees to appeal their decision to suspend his benefits, arguing that his work for B. A. Roy did not involve sheet metal work and submitting a note from B. A. Roy that listed his work duties.  At their meeting on October 12, 2005, the Trustees voted to continue the suspension of Laurendeau's benefits on the ground that the work he described included jobs related to the sheet metal trade and referred to Article 1, Section 5 of the Sheet Metal Workers' International Association Constitution.  Section 5 describes the various trades and work over which the union claims jurisdiction.

4

<u>Discussion</u>

Laurendeau's motion to modify the record seeks to add new information that was not submitted to the Trustees.  In his motion to suspend Local Rule 9.4, he argues that discovery and a trial are necessary to resolve factual issues in this case.  The Pension Trust objects to both motions.

I.  <u>Motion to Modify the Record</u>

Acknowledging that his motion was not filed within the time allowed, Laurendeau moves to supplement the administrative record without addressing the timeliness issue.  He argues that the administrative record should include his affidavit and documentation pertaining to benefits he has received from the Pension Trust's parent, the Sheet Metal Workers' International Association.[3]  He also argues that a reduced level of deference is due the Trustees' decision because the Union makes benefit decisions and pays Plan benefits and because the disputed Plan language allows an overly broad definition of the Union's jurisdiction.  He asserts that discovery and an evidentiary hearing are necessary to determine the actual scope of the Union's jurisdiction, the definition of "sheet metal contractor,"

---

[3]Laurendeau filed a different set of documents with his motion for judgment, although none of those documents were submitted to the Trustees.  He has not filed a motion to modify the record to include those documents.  Given that change in course, Laurendeau's motion to modify may be moot.

and whether the Trustees considered an amended version of the
Plan in their decision to suspend his benefits.  He further
asserts that other sheet metal workers are both receiving
benefits and working in the trade, which he contends shows that
the Trustees were biased against him.  The Pension Trust objects
to Laurendeau's motion to modify the record on grounds that the
motion is untimely and that supplementation of the record is not
appropriate in this case.

    A.  <u>Timeliness</u>

Local Rule 9.4 governs suits that include a claim or claims
under ERISA, pursuant to 29 U.S.C. § 1132(a)(1)(B), which
includes Laurendeau's suit.  Under the rule, the defendant is
required to serve and file a copy of the administrative record
with its answer.  LR 9.4(a).  The record includes relevant plan
documents and documents considered or generated during the
benefit determination proceedings.  LR 9.4(a).  "Any motion to
modify the administrative record shall be served and filed within
ten (10) days after the administrative record is served."  <u>Id.</u>

The Pension Trust filed the administrative record on
February 7, 2006.  Laurendeau did not move to modify the record
or to extend the deadline for doing so within the time allowed
under Rule 9.4(a).  Instead, he filed his motion on July 31,
2006, without seeking leave to do so and without providing any

justification for the late filing.[4]

As the Pension Trust points out, if Laurendeau had sought an extension of time when he filed his motion to modify the record, he would have had to show "excusable neglect" as the cause of the late filing.  See Fed. R. Civ. P. 6(b)(2); Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 117 (1st Cir. 2005).  Although Laurendeau failed to file such a motion, his motion to modify will be deemed to include a request for late filing under the "excusable neglect" standard.

"[T]he excusable neglect inquiry involves a significant equitable component and must give due regard to the totality of the relevant circumstances surrounding the movant's lapse." Dimmitt v. Ockenfels, 407 F.3d 21, 24 (1st Cir. 2005) (internal quotation marks omitted).  Factors to consider in assessing "excusable neglect" include "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).  The most important factor is "the asserted reason for the mistake," and a late filing is not excused if it is due to "counsels'

---

[4]Although Laurendeau was not represented during the administrative proceedings, he is represented by counsel here.

inattention or carelessness, such as a failure to consult or to abide by an unambiguous court procedural rule." <u>Dimmitt</u>, 407 F.3d at 24.

Laurendeau offers no reason for waiting five months after the deadline to file his motion to modify the record. He states only that the parties were unable to agree to amend the administrative record to include the extrinsic information he seeks to add. The docket shows that during the time between the filing of the administrative record and the time he filed the motion to modify the record, Laurendeau filed two motions to extend the time for filing the parties' joint factual statement. The Pension Trust assented to the first motion but filed a limited objection to the second motion on June 8, 2006, noting that Laurendeau had not filed a motion to modify the administrative record and noting the extended delay Laurendeau had caused in filing the joint factual statement. Laurendeau's motion to extend time was granted in part on June 21 with the following admonition: "Plaintiff is advised that NO further continuances will be granted and that the court expects real compliance with the intent and purpose of LR 9.4(b) and not the perfunctory and inadequate proposed joint statement filed on 5/23/06." Laurendeau nevertheless waited another six weeks to file his motion to modify the record.

Under these circumstances, Laurendeau has failed to show

that the delay in filing his motion was due to excusable neglect. In addition, as the Pension Trust points out, modification of the record would require additional delay, which is contrary to the purpose underlying ERISA to provide an "expeditious method of resolving disputes over benefits claimed under an employee benefits plan." Recupero v. New Eng. Tel. & Tel. Co., 118 F.3d 820, 831 (1st Cir. 1997); see also LR 9.4. Therefore, the motion to modify is denied as untimely.

B.   Expansion of the Record

Even if the motion had been timely filed or if the untimely filing had been excused, Laurendeau's motion to modify the record would not succeed. The focus of judicial review is the record made in the administrative proceedings. Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005). The materials Laurendeau seeks to add to the record, his affidavit about benefits from the Sheet Metal Workers' International Association, despite his employment at B.A. Roy Steel and documents related to those benefits, were not submitted to the Trustees. Laurendeau's request to add new information to the record ignores the rule that "the final administrative decision acts as a temporal cut off point." Id. Although exceptions exist, "[s]till, at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record

before the administrator."  Liston v. UNUM Corp. Officer
Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003).

Laurendeau argues that the International Association's
decision to continue to pay him benefits shows that the Trustees'
contrary decision was wrong.  That theory does not fall within an
obvious exception to the rule limiting the record to the
information presented to the Trustees.  See Orndorf, 404 F.3d at
520 ("We need not catalogue the situations in which new evidence
is admissible, other than to note it is more obviously relevant
when the attack is on the process of decision making as being
contrary to the statute than on the substance of the
administrator's decision.").  More importantly, however, the
International Association has now suspended Laurendeau's benefits
because of his employment at B.A. Roy Steel.[5]  Therefore, the
evidence he seeks to admit through his motion to modify the
administrative record no longer supports his position,
undermining any relevance it might have had, and he has not shown
a good reason to overcome the presumption against supplementing
the record.

---

[5]Laurendeau's arguments that the International Association
wrongly decided to suspend his benefits are not considered in
this suit, which seeks judicial review of the Trustees' decision,
not the subsequent decision by the International Association.

C.  <u>Standard of Review</u>

 As part of his motion to modify the record, Laurendeau
argues that the court should use a heightened standard of review
because a conflict of interest existed when the Trustees decided
to suspend his benefits.  The primary conflict, Laurendeau
argues, is that the Union both makes benefit decisions and pays
the benefits.  He also argues that the Plan language allows the
Trustees to make benefit decisions based on personal
considerations and to expand the Union's jurisdiction and
contribution base.

It is far from clear what relevance the standard of review
has in the context of Laurendeau's motion to modify the record.
<u>See</u> <u>Orndorf</u>, 404 F.3d at 519 (same rule for modifying record
regardless of standard of review).  Even if the standard of
review were properly raised in this context, Laurendeau has not
shown that a conflict existed to support his request that a
heightened standard of review be used here.  A structural
conflict alone, where the decision maker has a financial interest
in the decision, is not a sufficient basis to impose a heightened
standard of review.  <u>Janeiro v. Urological Surgery Prof'l Ass'n</u>,
457 F.3d 130, 139 (1st Cir. 2006).  A claimant must also show
additional factors that indicate the decision was improperly
motivated.  <u>Id.</u> at 140.

In its objection, the Pension Trust shows that the Trustees

are not all representatives of the Union but instead are divided
equally between management and Union members.  See Admin. Rec. at
77.  The mixed allegiances of the Trustees, therefore, undermines
Laurendeau's structural conflict theory that the Union is both
making benefits decisions and paying for those benefits.  In
addition, Laurendeau offered no competent evidence that the
Trustees decided to suspend payment of his pension based on
personal considerations or for the purpose of expanding the
Union's jurisdiction.  The First Circuit has reiterated that
"'[t]o affect the standard of review . . . a conflict of interest
must be real.  A chimerical, imagined, or conjectural conflict
will not strip the fiduciary's determination of the deference
that otherwise would be due.'"  Tsoulas v. Liberty Life Assurance
Co. of Boston, 454 F.3d 69, 77 (1st Cir. 2006) (quoting Leahy v.
Raytheon Co., 315 F.3d 11, 16 (1st Cir. 2002)).


     D. Amendment of the Plan

     Section 503(a) of the Plan was amended, effective on May 1,
2005, adding work that would cause a suspension of pension
benefits.  In Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739
(2004), the Supreme Court held that ERISA's anti-cutback rule, 29
U.S.C. § 1054(g), "prohibit[ing] any amendment of a pension plan
that would reduce a participant's 'accrued benefit," was violated
by the pension fund's amendment that restricted the scope of

12

employment an early retiree could do and still receive pension benefits.  Id. at 741 & 744-45.  Laurendeau asserts that he is entitled to discovery to determine whether the Trustees relied on the amended version of § 503(a) in their decision to suspend his benefits.

The pertinent difference in the two versions of § 503(a) is an additional restriction in the amended version.  Both the pre- and post-amendment versions of § 503(a) provide that pension benefits would be suspended if the retiree "returns to employment as a sheet metal worker or in other related crafts within the jurisdiction of any local union of the Sheet Metal Workers' International Association."  As amended, § 503(a) also precludes work "in any capacity with an employer that is a sheet metal contractor (or is a contractor in other related crafts) that is not a party to, or is otherwise bound by, the Collective Bargaining Agreement with the Union or a collective bargaining agreement with any local union of the Sheet Metal Workers' International Association."  Admin. Rec. at 66.

The Plan Administrator said in his letter dated June 10, 2005, that the Trustees had directed him to suspend Laurendeau's pension benefits "effective July 1, 2005, "for violation of Section 5.03 of the Plan, which is summarized in Section 14 of the Summary Plan Description (SPD).  A copy of Section 14 is enclosed."  Admin. Rec. at 154.  Although the copy of the letter

provided in the administrative record does not include the copy
of Section 14 that was sent, Laurendeau paraphrased Section 14 in
his letter of appeal dated August 1, 2005, as follows:  "You have
sited [sic] me for section 14 stating that you can no longer work
in the trade or other related crafts."  Admin. Rec. at 146.  The
Trustees' minutes from their meeting on June 8, 2005, when they
decided to suspend his benefits, states:  "Mr. D'Alfonso noted
that Mr. Gerard Laurendeau is receiving a pension, but to his
knowledge is working in the trade.  After some discussion, Mr.
D'Alfonso motioned to suspend Mr. Laurendeau's pension until he
could provide proof that he is not working in the trade."  Admin.
Rec. at 149.  Further, Laurendeau responded to the June 10 letter
on June 16, stating that he had agreed not to work in the "Sheet
Metal trade" after retirement and that he was "no longer doing
any sheet metal work or anything connected with the trade."
Admin. Rec. at 152.

Contrary to the rule of administrative exhaustion for ERISA
claims, Laurendeau did not raise the issue of the amendment of §
503(a) in the proceedings before the Trustees, which precludes
consideration of the issue here.  See Liston, 330 F.3d at 25.  If
failure to exhaust did not preclude the amendment issue that
Laurendeau now raises, the existing record amply shows that the
Trustees relied on language in section 503 that existed prior to
the amendment, precluding employment as "a sheet metal worker or

in other related crafts within the jurisdiction of any local
union of the Sheet Metal Workers' International Association"
would result in a suspension of benefits.  Therefore, no
discovery is necessary on that issue.

     E. Other Issues

     Laurendeau raises several other issues in a perfunctory and
jumbled manner.  He charges, without competent evidentiary
support, that other Union members who retired and received
pensions and then resumed work in the sheet metal industry
continued to receive their pensions.  He asserts that he is
entitled to introduce new evidence if there is a dispute over
plan language and that any ambiguity in plan language must be
construed in his favor.[6]  He cites "29 U.S.C. §
1053(a)(3)(3)(ii)" for the proposition that his benefits could
only be suspended if he were employed in a job that would
otherwise be available to a Union member, which is an argument
pertaining to the merits of his case.

     These miscellaneous issues, theories, and allegations are
not sufficiently developed to support Laurendeau's motion to
modify the record and are not considered here.

_____

     [6]To the contrary, because the Plan granted complete
discretion to the Trustees to construe the terms of the Plan,
their interpretation is entitled to deference.  See, e.g.,
Boardman v. Prudential Ins. Co. of Am., 337 F.3d 9, 15 (1st Cir.
2003).

II.  Motion to Suspend Local Rule 9.4, Add to the Record, Allow
     Discovery, and Conduct an Evidentiary Trial

     Local Rule 9.4 provides a procedure for ERISA cases that
precludes discovery and a trial until after the court rules on
the parties' motions for judgment on the administrative record.
LR 9.4(d).  Laurendeau filed a motion to suspend Local Rule 9.4,
to add to the administrative record, to allow discovery, and to
conduct an evidentiary trial before he filed his motion for
judgment and three weeks after filing his motion to modify the
record.[7]  In this motion, Laurendeau asks the court to allow him
to supplement the record with information presented in his motion
to modify the record, to add information about his current work
status, and to add information about the decision by the National
Pension Fund to suspend his benefits.

     In large part, Laurendeau's motion to suspend Local Rule 9.4
serves as a reply to the Pension Trust's objection to his motion
to modify the record.[8]  Local Rule 7.1(e)(2) requires that a

_____

     [7]The court has not ruled on the parties' motions for
judgment, which were filed on September 6 and September 28.

     [8]Laurendeau's theory that his motions are not untimely
because he is seeking to add to the administrative record through
discovery and an evidentiary hearing, rather than to modify it,
is not persuasive.

16

party seek leave of court before filing a reply to an objection to a nondispositive motion.  Laurendeau did not move for leave to file a reply, and therefore the arguments he makes in opposition to the Pension Trust's objection are not properly before the court.  In addition, none of the arguments he makes would succeed on the merits, even if they had been properly presented.

   A.  <u>Fair Hearing</u>

   Laurendeau argues that he is entitled to supplement the record with new information because ERISA requires that he be afforded a fair hearing.  He cites 29 C.F.R. § 2560.503-1 that "sets forth the minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries . . . ."  § 2560.503-1(a).  As stated in the regulation, those provisions govern administrative proceedings, not the judicial review process.  Laurendeau does not challenge the Trustees' proceedings as having violated those requirements.  Therefore, Laurendeau's argument based on the "fair hearing" regulation is meritless.  <u>Cf.</u> <u>DiGregorio v. Hartford Comprehensive Employee Benefit Serv. Co.</u>, 423 F.3d 6, 14-15 (1st Cir. 2005) (claimant sought remand for further administrative proceedings, asserting lack of administrative compliance with statutory and regulatory requirements).

B.  <u>Opportunity to Present New Evidence</u>

Alternatively, Laurendeau argues that the restrictions of Rule 9.4 should not apply in his case because he did not have an opportunity to present evidence to the Trustees.  The record does not support his claim.  The record shows that he sent letters and a memo from his employer to the Trustees to explain the nature of his resumed work.  Laurendeau argues, however, that he could not have submitted the evidence that he offers here because he was not represented by counsel and because the evidence was not then available.

Laurendeau cites no authority to support a theory that a claimant who was unrepresented by counsel during the administrative process is entitled to introduce new evidence during judicial review.  As is discussed in the context of the motion to modify the record, the presumption in ERISA cases is that the decision will be based on the administrative record and a claimant must present a good reason to overcome that presumption.  <u>Liston</u>, 330 F.3d at 23.

In appropriate cases, new evidence or information might be added for judicial review of claims of corruption, personal bias by the administrator, and "prejudicial procedural irregularity" in the administrative review process.  <u>Orndorf</u>, 404 F.3d at 520. Laurendeau attempts to fit his case into an exception by asserting that he is challenging the procedure used by the

18

Trustees in reaching their decision and seeking to introduce evidence relevant to that issue.  He contends that no evidence was considered with respect to the definition of "sheet metal trade" and argues that he should be allowed to introduce new evidence to explain in more detail the work that he does at B.A. Roy Steel Erectors, Inc., to show that he is not doing work in the sheet metal trade.

Despite his conclusory assertions, Laurendeau has not presented a claim of prejudicial procedural irregularity.  He also does not explain why he did not provide more detail to the Trustees when given the opportunity to do so.[9]  Cf. Wright v. R. R. Donnelley & Sons Co. Group Benefits, 402 F.3d 67, 77 (1st Cir. 2005) (holding it was claimant's duty to provide evidence about his occupation).  He also has not offered any evidence here that would provide the detail that he claims is missing from the administrative record.  To the extent he argues that the National Pension Plan documents would provide explanatory evidence about the sheet metal trade, he has not shown the relevance of those documents, particularly in light of the dissimilarities between those documents and the Plan, as noted by the Pension Trust.

Therefore, Laurendeau has not shown "a very good reason" to

---

[9]Instead, on appeal, he simply reiterated the same cursory description of his work at B.A. Roy that he provided, unsuccessfully, initially, albeit reinforced with a note from his employer.

except his case from the presumption that review is limited to the administrative record.

C. <u>Discovery</u>

Laurendeau argues that he is entitled to discovery of "the plan administrator's own documents interpreting the language of the Plan and providing a standard for evaluation of the facts presented, analogous to an administrative agency's guidelines or regulations." That request is taken from <u>Glista v. UNUM Life Ins. Co. of Am.</u>, 378 F.3d 113, 122 (1st Cir. 2004), where the claimant had obtained a reference guide and training materials in discovery and sought to add them to the administrative record. The court noted that such documents and information were required to be disclosed to claimants in disability benefit disputes and that the guidelines and training materials were "discrete documents easily made available." <u>Id.</u> at 123. The court concluded that the disputed documents were relevant and considered them in reviewing the district court's decision. <u>Id.</u> at 125.

In this case, Laurendeau does not cite any specific documents or materials that he believes would be relevant to his claim that have not been disclosed to him. The Trustees cited provisions in the Plan and the Summary Plan Description in their first decision to suspend his pension and referenced Article I,

section 5 of the Sheet Metal Workers' International Association Constitution in their decision denying his appeal.  Those documents were all available to Laurendeau and are included in the administrative record on appeal.  Therefore, his amorphous request raises issues of delay and undue burden on the Plan administrators that are inconsistent with the purposes of ERISA. See Glista, 378 F.3d at 123.

Laurendeau also seeks information pertaining to his claim of disparate treatment.  He contends that the Trustees have not suspended benefits of other employees who retired and then resumed work in the sheet metal trade.  He did not raise this issue in the claims process before the Trustees, which is a prerequisite to pursuing the issue here.  Liston, 330 F.3d at 25. In addition, even if Laurendeau had raised the disparate treatment issue and had sought and been denied discovery on the issue, he would now have to show that the discovery he seeks would be helpful to his case.  Id. at 26.

To succeed on a theory that the Trustees acted arbitrarily based on disparate treatment, Laurendeau "must demonstrate, at a minimum, that [the Trustees] treated him differently from similarly situated employees."  Mauser v. Raytheon Co., 239 F.3d 51, 57 (1st Cir. 2001).  A disparate treatment theory is appropriate in an ERISA case when "it is easy to determine from records whether prior practice represents an administrative

21

construction." <u>Liston</u>, 330 F.3d at 26.  When, however, the plan's standard is vague and variables in the circumstances of other employees make it difficult to identify similarly situated employees, "comparison of the files of others who received or were denied benefits invites an open-ended and probably hopeless attempt to compare disparate situations." <u>Id.</u>  In addition, plan administrators cannot be required, under ERISA, to grant benefits merely based on past practices.  <u>See</u> <u>Foley v. Int'l Brotherhood of Elec. Workers Local Union 98 Pension Fund</u>, 271 F.3d 551, 558 (3d Cir. 2001).

Although Laurendeau names other retirees who he claims resumed work in the sheet metal industry without a suspension of their pensions, he has failed to present any competent evidence to support his allegations or explain why discovery is necessary to assemble such evidence.[10]  In addition, Laurendeau himself describes the language in the Plan pertaining to excluded work as broad and vague, which makes it unlikely that the comparisons he proposes would allow an easy determination from the records as to whether the Trustees' "prior practice represents an administrative construction." <u>Liston</u>, 330 F.3d at 26.  As such,

---

[10]Because Laurendeau and his counsel know the names and places of employment of the working retirees, they could be contacted and interviewed, and if willing, they could provide the necessary information.  The working retirees themselves appear to be a better source of information about the nature of their work and whether they are or are not continuing to receive benefits than would discovery from the Pension Trust.

even if the issue had been properly exhausted, which it was not, Laurendeau's theory is not sufficiently developed or supported to persuade the court that the "concerns about efficient administration that underlie the ERISA statute itself" and the procedures mandated by Rule 9.4 should be set aside here.  <u>Id.</u>

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion to modify the record (document no. 13) and motion to suspend Local Rule 9.4 (document no. 16) are denied.

SO ORDERED.

                                   Joseph A. DiClerico, Jr.
                                   United States District Judge

October 19, 2006

cc:  John-Mark Turner, Esquire
     Vincent A. Wenners, Jr., Esquire

23