UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Gerard Laurendeau</u>

   v.                                  Civil No. 05-cv-441-JD
                                          Opinion No. 2006 DNH 132
<u>Sheet Metal Workers</u>
<u>Local 17C-NH Pension Trust</u>


O R D E R

Gerald Laurendeau brought suit under the Employee Retirement Income Security Act ("ERISA"), challenging the decision of the Sheet Metal Workers Local 17C-NH Pension Trust ("Pension Trust") to suspend payment of his pension benefits after he returned to work. Before the parties filed motions for judgment on the administrative record, Laurendeau moved to modify the record and to suspend Local Rule 9.4 to allow additional proceedings in this case. Both motions were denied. <u>See</u> Order, Oct. 19, 2006 (doc. no. 23). The court now considers the parties' cross motions for judgment on the administrative record.


<u>Background</u>

Gerald Laurendeau worked in the sheet metal trade for many years. He was a participant in the Sheet Metal Workers' International Local No. 17C-NH Pension Plan, which is administered by the Pension Trust's Trustees. He took early retirement in November or December of 2004 and began receiving pension benefits under the Plan.

At a Trustees' meeting on June 8, 2005, one trustee reported that Laurendeau was working in the trade while receiving pension benefits. Based on that report, the Trustees decided to suspend Laurendeau's benefits until he could provide proof that he was not working in the trade. The Trustees sent Laurendeau a letter on June 10, 2005, notifying him that his pension benefits would be suspended on July 1, 2005, based on Section 5.03 of the Plan and Section 14 of the Summary Plan Description.

Section 5.03(a) of the Plan precludes pension benefits if a retiree returns to work as "a sheet metal worker or in other related crafts within the jurisdiction of any local union of the Sheet Metal Workers' International Association."[1] Section 14 of the Summary Pension Plan provides, in pertinent part:

> If you return to employment, other than as a sole proprietor or partner, in the trade, or in other related crafts, within the jurisdiction of any local union of the Sheet Metal Workers' International Association, after you have taken Normal, Early or Deferred Vested Retirement and begun to receive your monthly pension benefit from the Plan, payment of your benefits will be suspended for any calendar month in which you are employed for **forty (40)** or more Hours of Service.

---

[1] Section 5.03(a) was amended, effective May 1, 2005, to add a restriction on receiving pension benefits when a retiree resumed work "in any capacity with an employer that is a sheet metal contractor (or is a contractor in other related crafts) that is not a party to, or is otherwise bound by, the Collective Bargaining Agreement with the Union or a collective bargaining agreement with any local union of the Sheet Metal Workers' International Association." Admin. Rec. at 66.

Section 5.03(b) of the Plan and Section 14 of the Summary Plan Description require a pensioner who returns to work to notify the Trustees, in writing, of his resumed employment.  If a pensioner returns to work without providing the required notice, the Trustees may presume that he is engaged in work that disqualifies him from receiving his pension.  A pensioner may rebut the presumption of disqualifying work by presenting contrary evidence to the Trustees.

 Laurendeau did not file written notice of his resumed employment.  On June 16, 2005, after receiving the letter from the Trustees, he sent a letter to them denying that he was doing sheet metal work or any work connected with the trade.  He stated that he was working for B. A. Roy Steel Erectors as a Miscellaneous Iron and Maintenance Worker.  He described his work at B. A. Roy as follows:
> Worked on aluminum & steel truck beds
> Repair & weld aluminum lower end to boat
> Weld & repair cast iron parts for customers
> Weld & repair aluminum blocks & trans case for customers
> Weld & layout structural steel
> Weld & layout stainless steel railings
> Weld & repair any shop equipment (forklifts, trucks, etc.)
> Weld & repair trailers
> Weld & repair aluminum boats.

Jt. St. Mat. Facts ¶ 16.  Laurendeau's letter did not change the Trustees' decision to suspend his pension benefits.

 He appealed that decision in a letter dated August 1, 2005.  In his letter of appeal, Laurendeau again stated that he was

working at B. A. Roy Steel Erectors "as a miscellaneous and maintenance worker." Ad. Rec. at 146. He also provided a letter from Stanley Ziemba, president of B. A. Roy, which repeated the list of Laurendeau's work that he had provided previously except that Ziemba's list omitted "Repair and weld aluminum lower end to boat." The letter also stated that B. A. Roy did not do HVAC work. The Trustees denied Laurendeau's appeal because the list of his work at B. A. Roy included work that the Trustees found was related to the sheet metal trade based on Article 1, Section 5 of the Sheet Metal Workers International Association Constitution ("Union Constitution"). That section of the constitution claims jurisdiction for the Sheet Metal Workers' Association over certain trades, jobs, and tasks.

    The Trust Agreement incorporates the Plan and both give the Trustees "absolute power and exclusive and complete discretion to administer the Trust assets in conformity with the Agreement and Declaration of Trust." The Trustees also have "absolute and complete power to construe the provisions of [the Trust Agreement] and the terms used herein, . . . ." The Trustees have "full authority to determine eligibility requirements for benefits, in conformance with applicable laws, and to adopt rules and regulations which shall be binding on the Employees, Participants and their Beneficiaries." The Plan gives the Trustees "absolute discretion with respect to the general administration and interpretation of the Plan . . . ."

Discussion

Laurendeau moves to reverse the Trustees' decision to suspend his benefits or to remand for further proceedings. He asserts that the ordinary rules of contract interpretation should apply, that the court should consider evidence outside the administrative record, and that he is entitled to judgment based on Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739 (2004). The Trust moves for judgment in its favor, contending that the Trustees' decision is entitled to deferential review, that the Trustees reasonably found that Laurendeau was working in the sheet metal trade, and that Heinz does not apply.

To the extent these issues were addressed in the October 19 order those rulings will not be repeated here. Instead, the court will refer to the prior order unless it is necessary to provide further explanation.

A.  Standard of Review

Where the terms of an ERISA plan give discretion to the plan administrator to make benefits decisions and to construe the terms of the plan, "the district court ordinarily should uphold such determinations by the administrator unless they constitute an abuse of discretion, or are arbitrary and capricious." Janeiro v. Urological Surgery Prof. Ass'n, 457 F.3d 130, 139 (1st Cir. 2006). It is undisputed that the Plan and the Trust at issue in this case give the Trustees discretion to construe their

terms.  Therefore, the ordinary principles of contract interpretation, which are used under the de novo standard, are inapplicable here.  See Balestracci v. NSTAR Elec. & Gas Corp., 449 F.3d 224, 230 (1st Cir. 2006) (applying de novo standard where parties agreed it governed).

Laurendeau asserts that the Trust carries the burden of proof to support the Trustees' "wrong but reasoned decision" because the Trustees were operating under a conflict of interest.  The issue of conflict of interest was thoroughly addressed in the court's prior order.  Laurendeau's new suggestion in support of a structural conflict of interest is that the Trustees, appointed by both the union and management, shared a common interest in expanding the trade for their own profit.  As is discussed in the prior order, even if Laurendeau could persuasively show that a structural conflict existed, which he has not accomplished, that would not be enough to establish a conflict of interest for purposes of changing the standard of review.  See Janeiro, 457 F.3d at 139.  The other conclusory grounds Laurendeau asserts do not support his conflict of interest theory.

Therefore, the Trustees' decision is reviewed under the deferential standard.


B.  Record for Review

Laurendeau again argues that the court should consider evidence outside the administrative record.  As was explained in

the court's previous order, the focus of judicial review is the record made in the administrative proceedings, and "at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator."  Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003).  Laurendeau failed to provide a good reason to expand the record in the context of his two previous motions and has not done so here.

C.  Amended Plan

Section 5.03(a) of the Plan was amended, effective on May 1, 2005, to add restrictions on work an early retiree could do.  In Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739 (2004), the Supreme Court held that ERISA's anti-cutback rule, 29 U.S.C. § 1054(g), "prohibit[ing] any amendment of a pension plan that would reduce a participant's 'accrued benefit,'" was violated by an amendment to the pension fund that restricted the scope of employment an early retiree could do and still receive pension benefits.  Id. at 741 & 744-45.  Therefore, if the new restrictions added to Section 5.03(a) were the basis for suspending Laurendeau's benefits, the Trustee's action would violate the anti-cutback rule under Heinz.

Administrative exhaustion is ordinarily required for ERISA claims.  Madera v. Marsh USA, Inc., 426 F.3d 56, 61 (1st Cir. 2005).  Each issue raised on appeal "should be raised in the

7

first instance during the claims process." Liston, 330 F.3d at 25. Having failed to raise the issue of the amendment of Section 5.03 for the Trustees' consideration, Laurendeau cannot raise it here. As the court also explained in the previous order, even if the issue had been raised, the Trustees did not rely on the amended version of Section 5.03(a) but instead applied that part of Section 5.03(a) that was unaffected by the amendment. Laurendeau offers nothing in the present motion that would undermine the court's previous conclusion.[2]

D. <u>Review of the Trustees' Decision</u>

As is discussed above, the Trustees' decision to suspend Laurendeau's pension benefits is reviewed under the arbitrary and capricious standard. Applying that standard, the court asks whether the Trustees' interpretation of Section 5.03(a) and its

---

[2]Laurendeau actually contends that the Trustees' decision was not based on the Plan at all but was instead part of an ongoing union dispute:

> Clearly, the reason that the Plaintiff's pension was suspended had little to do with ERISA and much to do with Sheet Metal Local 17's unsuccessful attempt to organize an iron worker craft (B. A. Roy Steel Erectors, Inc.) and force it to negotiate a Collective Bargaining Agreement to the detriment of Iron Workers Local Union 474.
> Samuel Gompers was correct. Jurisdictional disputes threaten the comity of labor unions. The disputes, however, have nothing to do with vested pension benefits under ERISA.

Pl. Mot. at 5-6.

decision to suspend Laurendeau's pension benefits were reasonable.  Otero Carrasquillo v. Pharmacia Corp., 466 F.3d 13, 17 (1st Cir. 2006).  That is, the Trustees' decision will be upheld "if it is reasoned and supported by substantial evidence." Tsoulas v. Liberty Life Assur. of Boston, 454 F.3d 69, 78 (1st Cir. 2006).  Evidence is "substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary."  Id. (internal quotation marks omitted).  Laurendeau bears the burden of showing that the Trustees' decision "violated the arbitrary and capricious standard."  Recupero v. New England Tel. & Tel. Co., 118 F.3d 820, 825 (1st Cir. 1997).

The Trustees initially suspended Laurendeau's pension benefits when they learned that he had returned to work without notifying them as is required by the Plan.  Laurendeau does not dispute that the Plan requires written notification, that he did not provide written notification, and that the Plan imposes a presumption that a retiree who returns to work without providing the required notification is doing disqualifying work.[3]

The Trustees then gave Laurendeau an opportunity to show that he was not working in violation of Section 5.03(a) of the

---

[3] Although Laurendeau argued in his previous motions that he provided notice orally that he was returning to work and that his work was approved, he did not present that evidence to the Trustees so that it is not part of the administrative record for review here.

Plan, which proscribes work "as a sheet metal worker or in other related crafts within the jurisdiction of any local union of the Sheet Metal Workers' International Association."  Ad. Rec. at 17. In response, Laurendeau provided a list of his work at B. A. Roy Steel Erectors, Inc., and on appeal he also included a similar list of examples of his work in a letter from B. A. Roy's president.  The Trustees concluded that the list of work Laurendeau and B. A. Roy provided "included jobs that related to the sheet metal trade" and "referred to Article 1, Section 5 of the Union Constitution."  Ad. Rec. at 125.  Donald Sarette, the Plan Administrator, sent Laurendeau a letter on October 12, 2005, notifying him of the Trustees' decision, enclosing a copy of Section 5 of the Union Constitution, and specifically referencing Section 5(c) of the Union Constitution.

   Laurendeau faults the Trustees for relying on the Union Constitution to define the phrases used in Section 5.03(a) of the Plan.  He argues that the definitions of "sheet metal" provided by "<u>American Heritage Dictionary of the English Language</u>" and "<u>Wikipedia Encyclopedia</u>" should govern instead.  Alternatively, he argues that an evidentiary hearing, based on the process used by the National Labor Relations Board, was necessary to determine the union's jurisdiction.  The Trust contends that the Trustees' reliance on the Union Constitution was reasonable because that document establishes the jurisdiction of the union and because administrators making benefits decisions under ERISA plans commonly rely on information outside of the plan documents.

10

Once again, Laurendeau primarily relies on issues and arguments that were not raised for consideration by the Trustees. These new theories cannot be considered here. See Liston, 330 F.3d at 25. In addition, however, Laurendeau challenges the Trustees' interpretation of Section 5.03(a), which was raised, at least to some extent, during the administrative process.

Neither the Plan nor the Summary Plan Description defines "sheet metal worker," "related crafts," or "the jurisdiction of any local union" as used in Section 5.03(a) of the Plan and Section 14 of the Summary Plan Description.[4] Laurendeau asked the Trustees for a definition of "related crafts" in his letter of appeal dated August 1, 2005. In response, the Trustees referred him to Section 5 of the Union Constitution and referenced Section 5(c) as the more specifically applicable section. See Ad. Rec. at 138.

"Where, as here, a term is not defined by the benefits plan, we give it an ordinary and popular reading as would a person of

---

[4] ERISA requires that participants be given a copy of a summary plan description which must include the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" and must "be written in a manner calculated to be understood by the average plan participant, and [] be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022; see also Varity Corp. v. Howe, 516 U.S. 489, 532 n.10 (1996) (describing 29 U.S.C. §§ 1021(a) & 1022). Laurendeau has not made a claim that the Summary Plan Description violates the ERISA requirements or misled him to believe he was eligible to return to work and maintain his pension benefits. See, e.g., Mauser v. Raytheon Co., 239 F.3d 51, 54 (1st Cir. 2001).

average intelligence and experience."  Otero Carrasquillo, 466 F.3d at 19 (internal quotation marks omitted).  That meaning may be derived from a dictionary definition.[5]  Id.  Once the disputed term is given its ordinary and popular meaning, the court must determine whether the plan administrator's interpretation of the term in the context of the benefits decision was unreasonable.  Id.

Laurendeau offered the definition of sheet metal from the American Heritage Dictionary as "metal that has been rolled into a sheet having a thickness between foil and plate."[6]  Pl. Mot. at 2.  The definition of sheet metal from "Wikipedia Encyclopedia" was similar.  Laurendeau did not offer definitions of "sheet metal worker" or "related."

The Dictionary of Occupational Titles describes a general group of "Tinsmiths, Coppersmiths, and Sheet Metal Workers" as follows:  "This group includes occupations concerned with laying out, cutting to size, bending or shaping, and soldering, brazing, riveting, or crimping sheet metal, such as copper, steel, aluminum, galvanized iron, and tinplate, to fabricate or repair sheet metal items, such as gutters, hot and cold air vents, cabinets, and light tanks."  Dictionary of Occupational Titles §

---

[5]In accordance with § 1022, it would appear to be more appropriate in this case to ascribe the meaning that would be understood "by the average plan participant" who would be a sheet metal worker like Laurendeau.

[6]Laurendeau failed to provide full citations for his dictionary and Wikipedia references.

12

804 (4th ed. 1991).  More specifically, the DOT describes a

"Sheet-Metal Worker" as follows:

> Plans, lays out, fabricates, assembles, installs, and
> repairs sheet metal parts, equipment, and products,
> utilizing knowledge of working characteristics of metallic
> and nonmetallic materials, machining, and layout techniques,
> using handtools, power tools, machines, and equipment:
> Reads and interprets blueprints, sketches, or product
> specifications to determine sequence and methods of
> fabricating, assembling, and installing sheet metal
> products.  Selects gauge and type of sheet metal, such as
> galvanized iron, copper, steel, or aluminum, or nonmetallic
> material, such as plastics or fiberglass, according to
> product specifications.  Lays out and marks dimensions and
> reference lines on material, using scribers, dividers,
> squares, and rulers, applying knowledge of shop mathematics
> and layout techniques to develop and trace patterns of
> product or parts [SHEET-METAL LAY-OUT WORKER (any industry)
> 809.281-010] or using templates. Sets up and operates
> fabricating machines, such as shears, brakes, presses,
> forming rolls, and routers, to cut, bend, block and form, or
> straighten materials.  Shapes metal material over anvil,
> block, or other form, using handtools.  Trims, files,
> grinds, deburrs, buffs, and smooths surfaces, using
> handtools and portable power tools.  Welds, solders, bolts,
> rivets, screws, clips, caulks, or bonds component parts to
> assemble products, using handtools, power tools, and
> equipment. Installs assemblies in supportive framework
> according to blueprints, using handtools, power tools, and
> lifting and handling devices.  Inspects assemblies and
> installation for conformance to specifications, using
> measuring instruments, such as calipers, scales, dial
> indicators, gauges, and micrometers.  Repairs and maintains
> sheet metal products.  May operate computer-aided-drafting
> (CAD) equipment to develop scale drawings of product or
> system. May operate laser-beam cutter [LASER-BEAM-MACHINE
> OPERATOR (welding) 815.682-010] or plasma arc cutter [ARC
> CUTTER, PLASMA ARC (welding) 816.364-010] to cut patterns
> from sheet metal.  May be designated by type of metal as
> Coppersmith (any industry); Tinsmith (any industry); or
> according to type of activity as Fabricator, Special Items
> (any industry); Model Maker, Sheet-Metal (any industry);
> Product-Development Worker (any industry); Roofer, Metal
> (construction); Sheet-Metal Installer (any industry); Sheet-
> Metal Worker, Maintenance (any industry); Shop Mechanic (any
> industry).

Id. § 804.281-010.  Dictionaries define "related" to mean

13

"[b]eing connected, associated."  The American Heritage Dictionary 1473 (4th ed. 2000); The Random House Dictionary 1626 (2d ed. 1987).

Section 5(a) of the Union Constitution asserts jurisdiction over a long list of work including "estimating, manufacture, fabrication, assembling, handling, erection, hanging, application, adjusting, alteration, repairing, dismantling, reconditioning, testing and maintenance of all sheet metal work" and "drawings or sketches . . . used in fabrication and erection" and lists the materials subject to jurisdiction.  Ad. Rec. at 157–58.  Section 5(c) describes particular materials and uses that would be subject to Union jurisdiction:  "Any and all types of sheets, flat, formed in brake, corrugated or otherwise formed or reinforced, and all rolled, drawn, pressed, extruded, stamped or spun sheets, shapes and forms of plain or protected metal specified for use in connection with or incidental to roofing, decking, flooring, siding, waterproofing, weatherproofing, fireproofing, for base and support of other materials, or for ornamental or other purposes."  Id. at 158.

The definition of sheet metal worker provided by the DOT is similar to the jurisdictional definition in the Union Constitution, relied on by the Trustees.  Laurendeau's definitions of "sheet metal" are not inconsistent with those descriptions of sheet metal work.  As such, the Trustees' interpretation of Section 5.03(a), based on the jurisdictional provisions of the Union Constitution, was not unreasonable.

14

In support of its motion, the Trust provided a detailed analysis of the work described in Section 5 of the Union Constitution in relation to the work Laurendeau claimed he was doing at B. A. Roy.  Laurendeau's own description of his work at B. A. Roy, includes work on shaped metal, such as railings, which is covered by Section 5(c).  Other parts of Section 5 describe more of the work Laurendeau was doing at B. A. Roy.  See Trust Mot. at 9-11.

Under the terms of the Plan, because Laurendeau did not provide written notice before he returned to work, a presumption existed that he was doing disqualifying work.  He, therefore, bore the burden of showing that his work at B. A. Roy did not disqualify him from receiving his pension benefits.  In addition, in an ERISA case where the nature of a claimant's work is at issue, the claimant bears the burden providing specific evidence about his work.  See, e.g., Wright v. R. R. Donnelley & Sons Co. Group Benefits, 402 F.3d 67, 77 (1st Cir. 2005).  As the court noted in its previous order, Laurendeau failed to present additional evidence about the nature of his work to the Trustees and has offered no analysis here to show that his work at B. A. Roy was not related to sheet metal work.

The work that Laurendeau described at B. A. Roy included activities that are at least arguably related, that is connected or associated, to the activities described in Section 5(c).  Laurendeau did not present evidence to the Trustees and has not shown in this proceeding that his work at B. A. Roy was unrelated

15

to the work described in Section 5(c).  Therefore, based on the record presented here, the Trustees' decision to suspend Laurendeau's pension benefits based on his work at B. A. Roy and Section 5.03(a) of the Plan was not unreasonable.

## Conclusion

For the foregoing reasons, the defendant's motion for judgment (document no. 22) is granted without prejudice to the plaintiff to seek reinstatement of his pension benefits from the Trustees if he can prove that he is not performing disqualifying work.  The plaintiff's motion for judgment (document no. 19) is denied.

The clerk of court shall enter judgment accordingly, affirming the decision of the Trustees to suspend the plaintiff's pension benefits until the plaintiff can establish that he is not doing disqualifying work, and close the case.

SO ORDERED.

                                          Joseph A. DiClerico, Jr.
                                          United States District Judge

November 21, 2006

cc:   John-Mark Turner, Esquire
      Vincent A. Wenners, Jr.